ELIZABETH KIEHN
v.
H. C. BESTOR.

*Assignments—Preferences—Judgment Note—Execution—Whether Dormant—Fraud—Evidence—Rehearing—Refusal of Certificate of Importance.*

1.   The holder of a judgment note is not required to use greater diligence as to its collection than if his claim was of a different character.

2.   In the absence of fraud, a creditor may enforce his claim against a debtor, knowing him to be insolvent.

3.   The fact that the attorney who entered up judgment on a judgment note also drew the deed of assignment of its maker is not of itself evidence of fraud.

4.   To render dormant an execution in the hands of an officer, some command must be given by the execution creditor inconsistent with its mandate.

5.   A failure by the officer to make a levy within one hour of the receipt of the execution does not operate to forfeit the lien of the judgment creditor upon an assignment by the debtor thereafter made prior to a levy.

6.   The expiration of an execution during the pendency of proceedings on petition for a preference, and under a claim of priority of lien thereunder, does not affect the rights of the execution creditor.

7.   Evidence improperly ruled out by the trial court may be considered by this court on appeal.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Peoria County; the Hon. S. S. PAGE, Judge, presiding.

Mr. WILLIAM S. KELLOGG, for appellant.

Under the statute there is a lien upon the personal property of the defendant in execution, created and existing from the date of its receipt by the officer. In this case such a lien occurred an hour before the assignment was filed. This is sufficient, we submit, on the said objection that said execution was no lien. Leach v. Pine, 41 Ill. 69; Field v. Macullar, 20 Ill. App. 395.

But the fifth objection is that appellant lost her lien under her execution, and in support of this claim of the objectors they undertook to show that at the time the sheriff made demand under the execution, which was after the assignment had been filed and the assignee had received possession of the store and the key of the store from the insolvent, the appellant's attorney, upon being applied to by the officer having the writ and asked what further instructions he had for him at that time, said to the officer, in substance, "That is all at present; anything further I will give you notice of."

The officer had been hunted up by the attorney for appellant, and instructed by him to make a demand on the defend-

ant in execution to turn out property. This the officer had done, after the defendant in the execution had been pointed out to him and was just leaving the clerk's office, where the assignment had been filed some minutes before. These facts made it impossible to take any further step under the execution. As decided by our Supreme Court in Hanchett v. Waterbury, 115 Ill. 228, the legal title to the estate of the insolvent, "from the filing of the assignment, is, by operation of law, in the assignee, but the possession of it is in the court; and the assignee's relations to it are, in some respects, analogous to that of a receiver."

A mere statement by a party delivering an execution, in reply to the question what he wanted done with it, "Nothing that I know of," is not sufficient to warrant the sheriff in holding the execution "and failing to make a levy according to the mandate of the writ." Koren v. Roemheld, 6 Ill. App. 277.

A voluntary assignment passes all property, real and personal, to assignee, which the debtor at the time owned. And the whole management of the estate is given to the jurisdiction of the County Court. Freydendall v. Baldwin, 103 Ill. 325; Myers v. Fales' Sons & Co., 12 Ill. App. 354; Farwell v. Crandall, 120 Ill. 70, and cases there cited, especially Hanchett v. Waterbury, 115 Ill. 228.

Execution held prior lien to assignment: Field v. Ridgley, 116 Ill. 429; and that holder of judgment notes is not required to crush a struggling debtor at first opportunity.

Messrs. STEVENS, LEE & HORTON, for appellee.

UPTON, J. On the 22d day of September, A. D. 1886, the appellant loaned to her son, Walter Hopkins, $800, and in March, A. D. 1887, she loaned him the further sum of $300. The son was then engaged in business as a retail dealer in boots and shoes in the city of Peoria. For the first loan she took the judgment note of her son of date of loan, and for the second he gave his note of date of loan without cognovit to confess judgment. On the 16th of August, A. D. 1887, the

son informed appellant, who resided in the same house, in substance that "he had bills to meet," matured or maturing, and that "he had written to his creditors, and if they would give him time he could push through."

On the 17th of August, or the next day, the son, uncertain of his ability to obtain the extension desired, and fearing he might be broken up in business, informed the appellant of his financial condition, and she being greatly troubled about her claims and what she could do to obtain security for their payment, the son advised her to consult some attorney in the matter, giving her no advice what to do or what attorney to consult.

Appellant immediately called upon a Mr. Cameron, an attorney of Peoria, who had on a prior occasion transacted some business for her, for advice and aid.

Mr. Cameron being at the moment engaged, he introduced her to his law partner, Mr. Kellogg, to whom she stated her business, and was advised to enter a judgment on the judgment note she held against her son. Without acting upon the advice given, she returned to her home, and in the evening informed her son of the advice given her, and he again stated to her, "that if his creditors did not sue him or push him, he would come out all right."

On the 18th of August, 1887, appellant called upon her attorney, Mr. Cameron, again, and then directed him to proceed and enter a judgment upon the said $800 note, which she then left with him for that purpose. On the evening of that day she told her son that she had left the note with an attorney and directed judgment entered thereon, and he told her, "if she did that, he should be compelled to make assignment."

Appellant had no knowledge or information of the amount of her son's liabilities, or to whom he was indebted, or that he was intending to make an assignment other than as above stated, appearing in the record before us.

On the morning of the 19th of August, A. D. 1887, appellant again called upon her attorney and then made her affidavit, in proof of the execution of the judgment note and warrant of attorney, and a judgment was rendered thereon for

the sum of $943.80, the amount due thereon and costs, upon which execution was issued and placed in the sheriff's hands for said county at ten o'clock and ten minutes in the morning of that day.

At eleven o'clock and five minutes of the same morning, or about one hour after placing the execution in the hands of sheriff's deputy, the said Walter Hopkins executed a deed of assignment under the insolvent laws of this State, which was filed in the County Court of said county, therein making appellee, Harry C. Bestor, his assignee, and the estate of the insolvent was at once turned over and delivered to the assignee, before said execution was actually levied thereon.

On the 24th day of August, A. D. 1887, appellant petitioned the County Court of said county to allow her a preference in the distribution of said bankrupt estate to the extent of her judgment, and claiming a priority of lien thereon; on the 12th day of September, A. D. 1887, the County Court, on petition of the assignee, directed a sale of the insolvent estate at public auction, by the assignee, which was done as directed, and the proceeds thereof paid into said court by the assignee.

The hearing of the petition in the County Court was postponed or continued from time to time, awaiting proof of claims against the bankrupt estate, until the November term of the County Court, A. D. 1887, when the creditors of said bankrupt estate objecting to the allowance of the preference petitioned for, a hearing was had in said court, and judgment was given against appellant, from which an appeal was taken to the Circuit Court of that county and was there tried by the court, a jury being waived, and that court gave a judgment against the appellant. She brings the case to this court, and among other things assigns for error:

"3.   The finding of the court below is contrary to the law and the evidence in the case.

"4.   The court below erred in refusing to hold each and all of the refused propositions of law submitted to it in writing by and on the part of the appellant, Elizabeth Kiehn, as the law applicable to the issues in the case, and in refusing to so consider the same.

"5.  The court below erred in holding each and all of the given propositions of law submitted to it in writing by and on the part of the appellees as the law applicable to the issues in the case.

"6.  The court should have found for the plaintiff, Elizabeth Kiehn, and that her claim should be allowed and paid by the assignee as a preferred claim."

It is conceded that the note upon which judgment was rendered in appellant's favor was made in good faith and for an actual loan of money, and no pretense is made that it was not executed at the time it bears date and that the money for which it was given in fact went into the business in which the son was engaged, yet it is said in argument by the appellees, and is the first point made to sustain the judgment below, that retaining this note, as the appellant did, until she learned from her son that he was embarrassed in his financial affairs, was not such diligence as entitles her to the protection of this court.

Judgment notes, so called, in this State, are, and for many years have been, in general use among the business public, upheld by our courts, and judgments entered in pursuance thereof regarded as binding and obligatory.  The holders thereof are not required to use more diligence in time or manner of collection than in that of other indebtedness, nor are the reasons which induce proceedings to enforce their collection other or different than those which apply to indebtedness evidenced by other commercial obligations.

It is believed that a creditor has the right to enforce his demands after due against his debtor, even though he may have serious doubts of such debtor's solvency, and even though he may obtain the information creating such doubt from the word or conduct of his debtor, if in so doing the creditor does not, by concerted action with such debtor, or with intent to defraud, hinder or delay other creditors of his debtor.  *In re* Geohegan, 24 Ill. App. 157; Field v. Geohegan, 125 Ill. 168.

We believe it true in fact that the motives which usually move men to enforce collection of their demands against their debtors, is a want of the money due, or the doubtful solvency of their debtor, and we are not aware, as a proposition of law,

that such motives are to be regarded as illegal or invalid; and if we are correct in this, it must follow that appellant's judgment was not invalid by reason of any want of diligence on her part in the obtaining of it. There is no evidence in this record, apparent to us, indicating fraud on the part of appellant in the retention of the note thirteen months without attempt of collection, or in the entering up of judgment upon the note. *In re* Geohegan, *supra*. It is said, however, that because the same attorneys who drew the deed of assignment of the insolvent Hopkins also entered up the appellant's judgment on her judgment note, therefore the judgment is fraudulent.

The record discloses the fact that appellant knew but one attorney in the city of Peoria, one Mr. Cameron, who had before transacted some business for her, and, without suggestion from any one, to him she applied for aid in her time of trouble, and being engaged himself, he introduced her to his partner to whom she made known her wants and with whom she transacted her business.

This record shows that she did not know that her son was intending then to make an assignment, much less that the attorneys, or either of them, with whom she had intrusted her note for collection, were employed to make her son's assignment. Fraud is not to be presumed, but must be proven, is the rule of law. To invalidate this judgment for the cause alleged, would not only reverse the rule of law, but enforce the presumption *against* the evidence.

In our judgment, it can not be of importance to the rights of parties to this record who drew the deed of assignment and the papers to obtain the judgment on the note, whether members of the same or of different firms of attorneys, if, in point of fact, there was no fraud or collusion in obtaining the judgment, and none is shown in this record; and hence, in the obtaining of the judgment there was no fraud upon the creditors for those reasons, nor want of diligence on the part of appellant in enforcing the collection of the claim.

Secondly, it is said as a reason that the prayer of appellant's petition for preference should not be granted, that there was no lien under the execution upon the goods of the bank-

rupt, because, first, the direction given amounted to a stay of the execution and destroyed the lien as against the creditors; second, allowing the execution to be returned without any levy, or attempt to gain any preference by it, was a loss of all the benefit that appellant might have acquired by the confession of judgment. In other words, appellees now insist, admitting the confession of the judgment to have been proper, and the lien of the judgment valid as soon as the execution was placed in the officer's hands, that the lien was lost by the *laches* of Mrs. Kiehn or her attorney, by the specific directions given by one of her attorneys to the officers having the execution.

It is a well settled rule of law that the office of an execution is, not to secure, but to enforce payment of a debt, and as a consequence an attempt to make use of it for purposes of security merely is a perversion of the writ, and postpones it and the lien thereof to other liens or executions subsequently issued or accruing. It is an especially well settled rule of law that it is the duty of the sheriff to obey the mandate of his writ, viz: to collect the amount of the judgment therein named, unless he receives express directions from the plaintiff or some one acting for him to the contrary. A mere failure, neglect or refusal on the part of the plaintiff to give directions as to the manner or time of executing the writ does not constitute such interference with its execution as will have the effect of rendering it dormant. To produce that result the plaintiff must give some direction or command which is inconsistent with the mandate of the writ, and which it would be a breach of duty on the part of the sheriff to obey. The plaintiff in execution is not obliged or required, in order to preserve the lien of his execution, to advise or direct the sheriff or his deputies what to do, when or how to proceed, even though applied to for that purpose by the sheriff. He is only required to avoid such interference with the officer holding the execution as would render it improper for the latter to enforce payment according to the mandate of the writ. Koren v. Roembold, 6 Ill. App. 276, and cases cited. Do the facts in this record bring the case at bar within the rule stated? What

are the facts? The execution when issued was delivered at the office of the sheriff to one of his deputies, James E. Kearney, who had charge of the books and papers of this character, who noted thereon the time of its receipt, and subsequently handed the same to Robert McConnell, another deputy, to execute, who immediately called upon appellant's attorney to learn of the identity and locality of defendant in execution, Hopkins, and being so informed, and after making a demand for property wherewith to satisfy the execution, as by law required, made inquiry of appellant's attorney what further he wanted, who replied: "That was all that was required of me just at present and if anything further would be required he would let me know," and this is all the direction claimed to have been given the officer holding the execution by appellant's attorney. The above, both in act and conversation, took place in the court house on the morning of the day of the assignment, but not until after the deed of assignment was executed and delivered, and the key of the defendant's store had been delivered to Bestor, the assignee.

So far as shown in the record, appellant's execution, after delivery at the sheriff's office, for some reason was there held without directions from any one, until after the estate of the insolvent debtor had, by the deed of assignment, passed into the constructive, if not the actual possession of the assignee and the insolvent court. The property of the debtor was then beyond the reach of the officers holding the execution. A levy made then would have been unavailing.

It can not in fairness be supposed that this delay of less than an hour could have been caused by the act or desire of the appellant, or that of her attorney, acting in good faith in her behalf. Nor can it be believed, in view of the facts in this record, that the appellant or her attorney desired or intended to make use of this execution for the purpose of security merely.

Nor do we think the statement of the attorney to the officer holding the execution was, under the circumstances of this case, such an interference with its collection or enforcement as would render it dormant or postpone the lien thereof to the subsequent liens of creditors under the assignment.

Kiehn v. Bestor.

But there is another view, perhaps more conclusive than the one already stated. The evidence wholly fails to show that the appellant fraudulently colluded with the debtor in order to obtain any preference as against the creditors of the debtor in the assignment, or that any fraud of the law was intended. The execution became a lien, under the statute, on all the personal estate of the debtor from the time it was placed in the hands of the sheriff, which in this case was before the assignment was made. The appellant did not forfeit her lien as against the assignee of her debtor by the officer's neglect to make the levy within the hour after its delivery to him. The law allows a reasonable time in which to make the levy. The assignee under the law is but a mere volunteer, having no greater rights than the judgment debtor, the assignor, whom he succeeds. He takes the property subject to all liens to which it is liable at the time of making the assignment, and in this case all agree at that time the lien of appellant's execution was perfect and paramount to the assignment. And we think that the doctrine of postponement as to the rights of creditors and purchasers does not apply to the case at bar, even though it should be conceded that the sheriff was directed not to levy the execution; but from the evidence in this case we think he was not so directed. O'Hara v. Jones, 46 Ill. 288; Gates v. Dodge, 123 Ill. 50.

This record, in our opinion, shows that the claim of the appellant in this case was *bona fide* due her for money loaned on the judgment note a year or more before the assignment; that she had the legal right to enter up the judgment thereon; that the judgment and execution were regularly entered, and without fraud on part of appellant; that the execution was a valid lien prior to the assignment; that after the assignment a levy of the execution would have been unavailing; that during the life of the execution appellant petitioned the insolvent court for a preference under her priority of lien claimed under the execution; that the creditors, objecting to such preference, had proved their claims in the insolvent court, and submitted to its jurisdiction; that while the petition of appellant was pending, and her execution was in the hands of

the sheriff and was a lien on the estate of said bankrupt (which consisted entirely of personalty), said court ordered the assignee to sell the entire effects of the insolvent (except exemptions); that pending the determination of the matters in said petition in said insolvent court, the life of appellant's execution expired; that the appellant's rights to a priority of lien and a preference of payment of her said judgment was not, and should not have been held to be, prejudiced by the expiration of her execution by limitation, or the return thereof *nulla bona*, and that the County Court, sitting as an insolvent court, had ample power to, and should have, by its order and action, protected the rights of appellant in her claim of priority and preference in the payment of her said judgment, and should have decreed the judgment thereof as such preferred claim so far and to the extent of the assets of bankrupt in the hands of that court.

For these reasons the judgment of the court below is reversed and remanded.                    *Reversed and remanded.*

### On Petition for a Rehearing.

On a petition filed in this cause by the appellee for a rehearing we have again carefully examined this record, in view of the points made in the petition for rehearing and the arguments filed in support thereof, and we feel compelled to adhere to the opinion filed heretofore herein.    It is true that the language used in that opinion as the testimony of Mrs. Khein was ruled out by the trial court, as stated in the petition for rehearing, but we were of the opinion that the trial court erred in excluding it, and we treated and regarded it as proper evidence in the case, as we have no doubt it was.    It would have been, perhaps, more strictly accurate to have so expressed that fact in the opinion, but it was not deemed necessary, and was therefore omitted.    We are, upon further reflection and examination of cases cited, confirmed in the views expressed in our former opinion, and the motion for a rehearing is denied, and the certificate of importance asked for is refused. The determination of the case involves no new principle of law, but one of fact only.

*Rehearing denied and certificate of importance refused.*